[No. 1566-1.   Division One.   September 17, 1973.]

KENNETH LOYLAND et al., *Respondents*, v. STONE & WEBSTER ENGINEERING CORPORATION, *Appellant*.

*Wolf, Hackett, Beecher & Hart* and *Arthur R. Hart,* for appellant.

*Rutherford, Kargianis & Austin, Samuel C. Rutherford* and *Don M. Gulliford,* for respondents.

WILLIAMS, J.—Kenneth Loyland and George Edwin Cross brought this action against Stone & Webster Engineering Corporation to recover for personal injuries which they sustained while employed by a general contractor who was building an addition to the Rocky Reach Hydroelectric Dam located in Chelan County, Washington. The cause was tried to the court, sitting with a jury, and resulted in a verdict of $40,000 for Loyland and $35,000 for Cross. Stone & Webster appeals from the judgment entered on the verdict.

The facts are these: Public Utility District No. 1 of Chelan County by written contract employed Stone & Webster with responsibility

> to design and to supervise, direct and administer the construction of the four unit extension . . . to the Rocky Reach Hydroelectric Power Plant to complete the plant.

Also, it was specified in the contract that Stone & Webster was required to act as the district's "Engineers, Purchasing Department and Construction Supervisors" and would

> make all necessary engineering studies and determinations, recommend to you the type and character of equipment and of construction required and prepare plans and specifications for equipment, materials and construction work, . . .

Stone & Webster agreed that it would "supervise the entire construction, including all building operations, installation of all equipment and all other features" and would "provide for inspection of important items and require the fulfillment of all contracts in accordance with the plans and specifications."

The district promised to pay Stone & Webster a fixed fee for its performance and also a fee for the salaries of certain of its employees including those of its "Inspection-Expediting" department "for the time they are engaged on your (the district's) work plus an equal amount for overhead expenses."

The district then entered into a contract with Halverson-Mason for the general construction of the project. The form of the contract was prepared by Stone & Webster in great detail. The pertinent portions of the section on concrete provide that the contractor shall

Furnish all materials and equipment and manufacture, transport, place, finish, protect and cure concrete, and prepare surfaces of existing concrete and surfaces of concrete between placements. The Contractor will have the option of either furnishing a batching plant at the job site to supply concrete, or using ready-mixed concrete in accordance with specification for Ready-Mixed Concrete ASTM C94. Whichever source of concrete is utilized, the facilities must be in accordance with applicable specifications and approved by the Engineers.

In addition, it was provided:

The Contractor shall provide all formwork as required to receive and form all concrete work, conforming to the shapes, lines and dimensions of the members as shown on the Construction Drawings. Forms shall be substantial and sufficiently tight to prevent leakage of mortar or liquid; properly supported, braced and tied together and of ample strength and rigidity to support adequately, without deflection or distortion, the pressure and weight of the concrete as a liquid together with the movement of men and equipment. Vibration of concrete increases the fluid pressure on forms, which should be designed for higher pressures than otherwise.

Also, "The type, shape, size, quality and strength of all materials of which the forms are made shall be subject to the approval of the Engineers."

The Contractor shall provide equipment adequate for handling and placing concrete containing the maximum size aggregate and low slump concrete mixes. Approval of the Engineers shall be obtained before beginning a run of concrete.

The contractor was charged with compliance with safety regulations which Stone & Webster had authority to prescribe.

At the time of the accident, the general contractor, Halvorson-Mason, was completing placement of concrete into a

large form which it had designed and built. When about 400,000 pounds of wet concrete had been placed, the form broke, cascading the concrete, part of the form, and Loyland and Cross, who were working beneath the pour, into the Columbia River, causing the injuries complained of.

Stone & Webster assign error to three instructions given to the jury by the court, the court's refusal to give nine proposed instructions and its refusal to sustain the challenge to the sufficiency of the evidence. The three instructions given about which error is claimed are:

> The plaintiffs claim that the defendant was negligent in (2) failing to properly supervise the construction or manner of use of concrete forms erected by the general contractor; (b) failing to warn plaintiffs of any dangers or hazards that might exist; (c) failing to halt the activities of the general contractor when a hazardous condition existed. The plaintiffs claim that defendant's conduct was a proximate cause of injuries and damage to plaintiffs. The defendant denies these claims. The defendant further denies the nature and extent of the claimed injuries and damage.
>
> The foregoing is merely a summary of the claims of the parties. You are not to take the same as proof of the matters claimed and you are to consider only those matters which are established by the evidence. These claims have been outlined solely to aid you in understanding the issues.

Instruction No. 3.

> Washington State Safety Standards for Construction Work applicable to the general contractor, Halvorson-Mason, provides as follows:
> "WAC 296-40-135—Persons to be Notified of Work Overhead. When it is necessary for employees to work above other employees, those working underneath shall be notified, and when employees are put to work underneath other employees, those working overhead shall be notified."
> "WAC 296-40-420—Concrete Work.
> (2) Concrete forms shall be checked during pour to prevent danger of collapse, and constant supervision over same shall be maintained."

Instruction No. 7.

Engineers who plan and supervise construction projects are under a duty to exercise ordinary care for the safety of workmen on the project, and not to expose them to hidden dangers which are known or through the exercise of reasonable care should have been known to the engineers.

Instruction No. 8.

Stone & Webster contends that it did exercise due care in the preparation of the plans and carefully inspected the work to the extent that it was required to do so by the contract with the utility district. It is claimed that the inspections had nothing to do with the strength or stability of the forms' structure but only to make sure that the finished product would conform to the "line, grade and finish" specified in the plans. Stone & Webster further contends that it did not fail to exercise the required care in connection with the supervision and control of the project because the general contractor designed and built the forms and was in complete control of the operation.

■ It is apparent that the duties imposed upon Stone & Webster by its contract with the district involve both the practice of architecture and that of engineering. These practices are defined as follows:

The terms "architecture" and "practice of architecture" as used in this chapter mean professional service consisting in whole or in part of consultation concerning floor planning, the aesthetic or structural design of private or public buildings, their equipment or utilities and the responsible supervision of construction or the repair or alteration of buildings, by persons or firms offering such service for a fee.

RCW 18.08.110.

Practice of engineering: The term "practice of engineering" within the meaning and intent of this chapter shall mean any professional service or creative work requiring engineering education, training, and experience and the application of special knowledge of the mathematical, physical, and engineering sciences to such professional services or creative work as consultation, investigation, evaluation, planning, design and supervision of

construction for the purpose of assuring compliance with specifications and design, in connection with any public or private utilities, structures, buildings, machines, equipment, processes, works, or projects.

RCW 18.43.020. The law applicable to the determination of an architect's liability for injuries of a workman on a project is as follows:

> It is the duty of an architect to act with reasonable diligence in the performance of his duties; the determination of the question of the architect's failure to meet this duty is one of fact; the skill and ability he is bound to exercise are such as are ordinarily required of architects; when the contract between the architect and owner requires inspection and supervision during construction he must exercise the same degree of care in the performance of that duty; . . .

*Miller v. DeWitt*, 59 Ill. App. 2d 38, 92, 208 N.E.2d 249 (1965). *Accord, Montijo v. Swift*, 219 Cal. App. 2d 351, 33 Cal. Rptr. 133 (1963); *Geer v. Bennett*, 237 So. 2d 311 (Fla. 1970); *Scott & Payne v. Potomac Ins. Co.*, 217 Ore. 323, 341 P.2d 1083 (1959). *See* Comment, *The Supervising Architect: His Liabilities and His Remedies When a Worker Is Injured*, 64 Nw. U.L. Rev. 535 (1969).

The extent of supervision required of Stone & Webster in its contract with the district and the amount and character of inspection which it was to conduct, present issues of fact which only the jury could properly resolve from its examination of the contract and its evaluation of the other exhibits and the testimony of the several witnesses. Instructions Nos. 3 and 8, when taken with the other instructions to which no exceptions were taken, correctly frame those issues. An example of the task which the jury was required to undertake is furnished by Stone & Webster's contention that its contract with the district was limited by the amount of the fee charged; that if it had been paid for looking out for the safety of the contractor's employees it would have done so. It appears from the contract that in addition to a fixed fee, Stone & Webster was to receive the salaries plus an equal amount as overhead for the operation

of its inspection-expediting department. The jury could reasonably decide that the accident was due to a shortcoming in Stone & Webster's performance of its duties "to design and to supervise, direct and administer the construction of the four unit extension". Of course, we do not so decide—that was for the jury.

■ The safety code provisions set out in instruction No. 7 could properly be considered by the jury as evidence of safety standards. *Thorpe v. Boeing Co.*, 5 Wn. App. 706, 490 P.2d 448 (1971). As the instructions given properly submitted the case to the jury, we need not consider those proposed by Stone & Webster, some of which are misstatements of the law.

The judgment is affirmed.

FARRIS and CALLOW, JJ., concur.

Petition for rehearing denied December 20, 1973.

Review denied by Supreme Court February 4, 1974.