**DETWEILER BROS., INC., an Idaho Corporation, Plaintiff,**

v.

**JOHN GRAHAM AND COMPANY, a Washington Corporation, Defendant.**

**No. C–75–79.**

United States District Court, E. D. Washington.

April 1, 1976.

Lynden O. Rasmussen and Patrick A. Sullivan of Winston, Cashatt, Repsold, McNichols, Connelly & Driscoll, Spokane, Wash., for plaintiff.

Camden M. Hall of Foster, Pepper & Riviera, Seattle, Wash., for defendant.

## MEMORANDUM AND ORDER

NEILL, Chief Judge.

Plaintiff is a mechanical subcontractor who contracted via the general contractor to install a system of steam pipes in a multi-purpose coliseum for Washington State University at Pullman, Washington. Defendant is an architectural firm that contracted with the University to design, inspect and to a limited extent, supervise the installation of the Coliseum's steam pipe system. Defendant's supervisory duties included the responsibility to approve "the reliability of subcontractors' submittals" and the authority to stop work of subcontractors "whenever such stoppage may be necessary in his reasonable opinion to insure the proper execution of the Contract". The parties agree there is no privity of contract between them, defendant having contracted directly with the University, which is not a party to this action, and plaintiff having contracted with the University's general contractor. Jurisdiction is properly founded upon diversity of citizenship, pursuant to 28 U.S.C. § 1332, and Washington law applies.

Plaintiff's complaint alleges that defendant approved its submittal to substitute "grooved" piping in place of the welded or threaded pipe originally contemplated in plaintiff's contract, but that defendant later ordered plaintiff to stop work and replace the grooved pipe with welded pipe, causing plaintiff to incur damages in excess of $30,000.00.

Plaintiff earlier instituted an action against the pipe manufacturer but the United States District Court for the District of Idaho granted summary judgment in favor of the manufacturer. Plaintiff then instituted this action against defendant architectural firm for alleged misrepresentations concerning the pipe originally installed. Following this, plaintiff executed a "Release and Settlement Agreement" with the University and the prime contractor, which provided that only the signatories would be released. Defendant was not a signatory to the release.

Defendant now seeks summary judgment on the grounds that:

(1) Plaintiff has failed to state a claim on which relief can be granted because there was no privity of contract between plaintiff and defendant;

(2) The release signed by plaintiff bars plaintiff's claim against defendant because defendant is an agent of the State and therefore released by the release of the State, and because the release constituted an election of remedies;

(3) Plaintiff has failed to join the University and the prime contractor as defendants and, since they are indispensable parties, the action must be dismissed pursuant to Rule 19(b) of the Federal Rules of Civil Procedure.

Plaintiff has filed a motion for protective order to prevent defendant from deposing Mr. E. C. Connell, an employee of plaintiff, on the ground that Mr. Connell has no personal knowledge of the facts surrounding this litigation and that he is currently on vacation out of the State of Idaho where defendant proposes to conduct the deposition. Further, plaintiff seeks a protective order requiring defendant to be more specific about the scope of its examination of Mr. Connell and the documents defendant has requested plaintiff to produce. Plaintiff also seeks reimbursement for the costs of transporting its employee, Dean Harris, from Las Vegas, Nevada for defendant's deposition.

## I. *Defendant's Motion for Summary Judgment*

### *Privity of Contract*

■ Since the parties agree there is no privity of contract between them, plaintiff's claim is not supportable on a breach of contract theory. Nor can plaintiff maintain this action as a third-party beneficiary of defendant's contract with the University for the University was the only intended beneficiary of that contract and Washington law requires that third-party beneficiary contracts evidence "an intent that the promisor shall assume a direct obligation to" the third-party beneficiary. *McDonald Construction Co. v. Murray*, 5 Wash.App. 68, 71, 485 P.2d 626 (1971). No such intent can be inferred from the defendant's contract with the University. Further, al-

though the Washington State Supreme Court has indicated a willingness to entertain a suit against a consulting engineer based on a breach of implied warranty theory, *Prier v. Refrigeration Eng'r. Co.*, 74 Wash.2d 25, 442 P.2d 621 (1968), no case has held that such a suit can be maintained in the absence of privity of contract. *See, e. g. Loyland v. Stone & Webster Eng'r. Corp.*, 9 Wash.App. 682, 514 P.2d 184 (1973). *Cf. Stewart Warner Corp. v. Burns International Security Services, Inc.*, 343 F.Supp. 953 (N.D.Ill.1972). Therefore, plaintiff's suit is not maintainable under any breach of contract or related theory.

■ However, the absence of contractual privity between plaintiff and defendant does not affect plaintiff's tort claim, provided plaintiff can establish the existence of a duty between the parties, and defendant's breach of such duty, with the proximate result that plaintiff suffered the damages of which it complains. For reasons discussed below, the Court concludes that plaintiff has stated such a claim and that issues of material fact exist requiring a trial.

Courts are divided on the issue of whether privity of contract is a prerequisite to the maintenance of a tort suit by a contractor against an architect, and although the courts of Washington have not confronted the issue an emerging majority of jurisdictions have taken the position that a contractor can maintain a negligence action against an architect without direct privity of contract between the parties. *United States v. Rogers & Rogers*, 161 F.Supp. 132 (S.D.Cal.1958); *C. H. Leavell & Co. v. Glantz Contracting Corp.*, 322 F.Supp. 779 (E.D.La.1971); *A. R. Moyer, Inc. v. Graham*, 285 So.2d 397 (Fla.1973); *See also, Miller v. DeWitt*, 59 Ill.App.2d 38, 208 N.E.2d 249, *aff'd in part and rev'd in part on other grounds*, 37 Ill.2d 273, 226 N.E.2d 630 (cases summarized in Anno., 65 A.L.R.3d 249).

Defendant asserts that these cases are not the law of Washington and that even if they were defendant would still be entitled to summary judgment because plaintiff was

remiss in its duty to seek the pipe manufacturer's approval before installing the grooved piping. In support of its contention defendant cites *Vonasek v. Hirsch & Stevens, Inc.*, 65 Wis.2d 1, 221 N.W.2d 815 (1974), in which the Wisconsin Supreme Court held that, on the facts of the case, the defendant architect had no duty to warn plaintiff of certain construction hazards and that the damage to plaintiff was due to plaintiff's own negligence.

■ However, *Vonasek* gainsays defendant's argument for summary judgment because the court in that case held, after considering the negligence issue, that on the facts of the case the architect owed its duties only to the owner and not to the contractor, and that plaintiff's damages were caused by its own conduct. Since the *Vonasek* Court reached the merits of plaintiff's claim to hold that tort liability had not been proven, the negative implication of *Vonasek* is that privity of contract is not a condition precedent to the maintenance of a tort suit by a contractor against an architect. In any event, since *Vonasek* involved a full trial of the negligence issues, it is not authority for granting summary judgment in this case.

*Effect of the Release*

Defendant argues that plaintiff's execution of a release with the University also released defendant from liability as an agent of the University, relying on *Transpac Construction Co. v. Clark & Groff Eng., Inc.*, 466 F.2d 823 (9th Cir. 1972) and *Lundgren v. Freeman*, 307 F.2d 104 (9th Cir. 1962). However, these cases are distinguishable from the case at bench.

In *Transpac*, plaintiff construction company settled its claim against the owner for whom plaintiff had constructed a water supply system. Plaintiff then sought to assert precisely the same claims against the architectural firm that designed the system. *Supra* at 828. The Court concluded that since the defendant architect acted as an agent of the owner, plaintiff's release of the owner absolved the owner's agent for all settled claims, absent a contrary intention in the settlement agreement. *Supra* at 829. The *Transpac* holding would not require the Court to construe plaintiff's release of the University as a release of the defendant John Graham and Company because plaintiff's claim against defendant is totally unrelated to the claims plaintiff settled with the University and because the written release expressly applied only to its signatories, which did not include defendant.

■ *Lundgren* is similarly inapplicable to the facts of this case. A provision of the contract at issue in *Lundgren* stated that decisions of the defendant architect were subject to arbitration between the owner and plaintiff contractor, and such arbitration had occurred. *Supra* at 117. The *Lundgren* Court held that such arbitration constituted an election of remedies concerning the arbitration claims, which barred the plaintiff contractor from asserting those claims against the architect (which was the owner's agent). *Supra* at 116–117, 119. *Lundgren* would not preclude the claims plaintiff asserts against the defendant architect since, as noted above, plaintiff has not attempted to settle these claims with the owner, *i. e.*, the claims settled with the University in the written release are unrelated to those asserted against the defendant architect. Finally, the immunity of the defendant architects in *Lundgren, supra* at 117–118, arose from their contractual role as quasi-arbitrators, which the court characterized as a "quasi-judicial capacity". The defendant in this case assumed no such role and cannot claim the benefits of such immunity.

Other cases cited by defendant in support of its summary judgment motion appear to have been based solely on contract theories, *Blecick v. School District*, 2 Ariz.App. 115, 406 P.2d 750 (1965), or to have involved a suit by an owner against a contractor in which the contractor attempted to implead the owner's architect in a third-party complaint for indemnity. *Harrison Memorial Hospital Foundation v. Lent's Inc. v. Bouillon, Christofferson & Chairer, Inc.*, Kitsap County Cause No. 5594, Superior Court of

the State of Washington (1971). Both cases are inapposite because the former did not involve a tort claim and the latter stands merely for the procedural proposition that the defendant contractor's claim of defective plans was properly a complete defense against the owner's claim, and not a basis for a third-party complaint against the architect.

■ Further, there is no merit to defendant's contention that defendant and the University are joint tort-feasors and that the release of the State therefore released defendant from liability. For the University to be a joint tort-feasor it must have been independently guilty of tortious conduct which was a substantial factor in causing the alleged harm to plaintiff. *Robillard v. Selah-Moxee Irr. Dist.*, 54 Wash.2d 582, 343 P.2d 565 (1959). There is no contention that the University was guilty of any misconduct relating to the damages claimed in this case.

Finally, defendant argues that plaintiff's claim is based on a "negligent misrepresentation" theory and that plaintiff has failed to meet all the requirements for recovery under this theory, citing *Anthony v. Warren*, 28 Wash.2d 773, 184 P.2d 105 (1947) and *Kruger v. Redi-Brew Corp.*, 9 Wash.App. 322, 511 P.2d 1405 (1973). In so arguing defendant assumes plaintiff may not maintain this action on a simple tort theory, which is incorrect, as discussed above.

This Court is persuaded that the courts of Washington would permit the maintenance of this suit in tort, and there are issues of material fact concerning such a tort action. A crucial fact issue is generated by the May 12, 1971 letter from the defendant architect to the general contractor, which indicates defendant had obtained the manufacturer's approval for use of the grooved piping, but which also seems to impose on plaintiff the duty of insuring that the grooved piping is suitable under the temperature and lubrication conditions of the heating system. Fur-

ther, John P. Detweiler of the plaintiff corporation states in his deposition that he relied on defendant's approval of the piping in the May 12 letter and that he also obtained the required approval of the manufacturer via his "jobber". Hence, there is a direct conflict over the extent of defendant's duty to plaintiff, if any, defendant's breach of that duty and plaintiff's contributory negligence, if any.[1]

Pursuant to Federal Rule of Civil Procedure 56(d), the Court is empowered to "ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted". Accordingly, it shall be deemed established for purposes of trial that:

(1) There was no privity of contract between plaintiff and defendant. Therefore, plaintiff's breach of contract and breach of implied warranty of fitness claims are inapplicable and will not be considered further.

(2) Defendant's contract with the University was not a third-party beneficiary contract for plaintiff's benefit. Therefore, plaintiff's third-party beneficiary claim will not be considered further.

The issues of material fact remaining for trial are as follows:

(1) Whether defendant owed plaintiff a duty of due care in the exercise of defendant's supervisory powers over plaintiff.

(2) Whether defendant breached its duty to plaintiff, if any.

(3) Whether such breach, if any, was the proximate cause of any damages to plaintiff and the extent of such damages, if any.

(4) The extent of plaintiff's contributory negligence, if any, in choosing to install the grooved piping.

Therefore, the trial shall be limited to the issues outlined above, subject to any expan-

---

1. Although the transactions forming the basis of plaintiff's complaint antedate the effective date of Washington's comparative negligence statute, R.C.W. 4.22, that statute has been held to apply retroactively to acts committed prior to its effective date where liability is established after its effective date. *Godfrey v. State*, 84 Wash.2d 959, 530 P.2d 630 (1975).

sion or contraction of such issues as may be established in the pretrial order.

## II. *Plaintiff's Motion for Protective Order*

Plaintiff seeks a protective order prohibiting defendant from deposing plaintiff's employee, Mr. E. C. Connell, on the ground that Mr. Connell has no knowledge of the matters at issue in this case and that Mr. Connell is out of the state on vacation. Plaintiff also seeks reimbursement for the travel and living expenses necessary to produce another employee, Mr. Dean Harris, for defendant's deposition, because Mr. Harris is currently working on a project in Las Vegas, Nevada. Finally, plaintiff complains that defendant's request for production of documents is overly broad, and requests the Court to order a more specific request.

 Plaintiff's attack on defendant's attempt to depose Mr. Connell is founded on grounds of relevance. However, relevancy is broadly construed at the discovery stage of litigation and "a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." 8 Wright and Miller, *Federal Practice and Procedure*, § 2008 at 46–47. However, the time and place of conducting depositions is a matter that can be subject to a protective order and, in the case at bench, it is reasonable that the deposition of Mr. Connell be taken within the period of pretrial discovery, but after his return from vacation.

 Plaintiff is not entitled to the costs of producing Mr. Dean Harris for defendant's deposition. "As a normal rule plaintiff will be required to make himself available for examination in the district in which he has brought suit", and costs are not allowable absent "good cause". 8 Wright and Miller, §§ 2112 at 404–406. This rule would also apply to plaintiff's agents and employees, especially where, as here, plaintiff is responsible for their absence from the district.

 Finally, the request for production is overly broad in that it extends to all plaintiff's work on the coliseum project. Since plaintiff was engaged in aspects of the coliseum project other than those at issue in the case at bench, such discovery shall be limited to materials related to installation of the steam piping at issue.

WHEREFORE, it is hereby ORDERED:

(1) that defendant's motion for summary judgment be and the same is hereby, DENIED and the issues for trial shall be limited to those defined herein.

(2) that the deposition of Mr. Connell be conducted after his return from vacation unless he shall not return during the period of pretrial discovery, in which event defendant may move the Court for further relief.

(3) that defendant's motion for costs in producing Mr. Harris for deposition is DENIED.

(4) that defendant's request for production shall be limited to materials relating to installation of the steam piping at issue in this case.