[No. 3020–3. Division Three. November 13, 1979.]

GEORGE F. PORTER, *Appellant*, v. STEVENS, THOMPSON & RUNYAN, INC., *Respondent*.

*Michael E. DeGrasse* and *Critchlow & Williams*, for appellant.

*Herbert Freise, Jerry M. Makus*, and *Freise, Lohrmann & Makus*, for respondent.

ROE, J.—George Porter was injured in a ditch cave–in at the time he was employed by Harry Carlyle Excavating Co. installing a sewer line in Walla Walla, Washington. The consulting engineers—also called the architects—for the project were Stevens, Thompson & Runyan, Inc. (STR). Porter sued STR and the City of Walla Walla. STR and Walla Walla cross–claimed against each other and joined Harry Carlyle Excavating, Inc., as a third–party defendant.

STR and Walla Walla's third–party claims against Carlyle were severed from the trial of Porter's case. Porter voluntarily dismissed Walla Walla. This resultant damage action for personal injuries was solely against STR. Porter moved for partial summary judgment against STR, reserving only the issue of damages. STR countered with a motion for summary judgment on the issue of liability from Porter. The trial court entered summary judgment for STR, dismissing Porter's claim with prejudice.

■ For there to be liability on the part of STR, it must have breached a duty owed Porter. In this case such duty must have arisen either under the contract between STR and Walla Walla, or by an assumption of duty to Porter by STR. This latter duty is imposed upon engineer–architects whose contracts give them the *right* to stop unsafe construction processes. This right has been read by some courts as imposing a *duty* upon the engineers. *See Associated Eng'rs, Inc. v. Job,* 370 F.2d 633 (8th Cir. 1966); *Reber v. Chandler High School Dist. 202,* 13 Ariz. App. 133, 474 P.2d 852 (1970); *Erhart v. Hummonds,* 232 Ark. 133, 334 S.W.2d 869 (1960); *Miller v. DeWitt,* 37 Ill. 2d 273, 226 N.E.2d 630 (1967). *But see Baker v. Pidgeon Thomas Co.,* 422 F.2d 744 (6th Cir. 1970); *McGovern v. Standish,* 65 Ill. 2d 54, 357 N.E.2d 1134 (1976); *Krieger v. J.E. Greiner Co.,* 282 Md. 50, 382 A.2d 1069 (1978); *Wells v. Stanley J. Thill & Assocs., Inc.,* 153 Mont. 28, 452 P.2d 1015 (1969); *Peterson v. Fowler,* 27 Utah 2d 159, 493 P.2d 997 (1972).

In *Loyland v. Stone & Webster Eng'r Corp.,* 9 Wn. App. 682, 514 P.2d 184 (1973), the court affirmed a verdict against the defendant supervising engineers for personal injuries sustained by two of the contractor's employees who were injured when a concrete form broke. The engineers were charged with the duty to "supervise, direct and administer . . .", "prepare plans and specifications for . . . construction work, . . .", "'supervise the entire construction, including all building operations . . . and all other features'" and to "'provide for inspection of important items . . ." Further, the engineers were to approve "'[t]he

type, shape, size, quality and strength of all materials of which the forms are made . . ." *Loyland v. Stone & Webster Eng'r Corp., supra* at 683–84. The engineers also had the authority to prescribe the safety measures with which the contractor was to comply. The court therefore declined to overrule the jury's resolution of the "extent of supervision required of Stone & Webster in its contract with the district and the amount and character of inspection which it was to conduct . . ." *Loyland v. Stone & Webster Eng'r Corp., supra* at 687.

*Amant v. Pacific Power & Light Co.,* 10 Wn. App. 785, 520 P.2d 181 (1974), *aff'd,* 84 Wn.2d 872, 529 P.2d 829 (1975), presented the question of a supervising engineer's liability for injury to one of the contractor's employees who was injured when the contractor's crane struck a high power line. The engineer's contract with the City of Yakima provided that "the Contractor shall . . . be responsible for the methods and equipment used is [*sic*] fulfilling the Contract, *but such methods and equipment shall have the approval of the Engineer." Amant v. Pacific Power & Light, supra* at 790. The engineer's field inspector stated that the engineers had the power to shut down the job for safety violations and that the engineers had known of two previous similar incidents of the contractor's crane contacting the power lines. On these facts the court held that the *extent* of the engineer's duty to the injured worker in the discharge of that duty presented an issue of material fact to be determined by the trier of fact. Summary judgment of dismissal was thus reversed and the case remanded for trial.

The facts of the case at bar are significantly different from either *Loyland* or *Amant.* The contract between STR and the City of Walla Walla provided:

9. General Engineering Services During Construction. The Engineers will provide general inspection of the Contractor's work in behalf of the City, to the extent defined in the contract documents, by periodic visits to the site of the project to observe the progress and quality

of the work and to determine, in general, if the work is proceeding in accordance with the intent of the contract documents. On the basis of these visits, the Engineers will keep the City informed of the progress of the work, will endeavor to guard the City against defects and deficiencies in the work of the Contractor(s) and may reject work or materials that fail to conform to contract requirements. *Visits to the construction site and observations made by the Engineers shall not relieve the Contractor of his obligation to conduct comprehensive inspections* of the work sufficient to insure conformance with the intent of the contract documents, and *shall not relieve the construction contractor* of his full responsibility for all construction means, methods, techniques, sequences, and procedures necessary for coordinating and completing all portions of the work under the construction contract and *for all safety precautions incidental thereto.*

. . .

11. Resident Inspection of Construction and Field Staking. The Engineers will furnish the services of a Resident Inspector to provide continuous inspection of the work of the Contractor during the period of construction as well as field personnel and equipment necessary for construction staking. . . . The Resident Inspector and necessary assistants will endeavor to guard the City against defects and deficiencies in the work of the Contractor(s) and help determine if the provisions of the contract documents are being fulfilled. *Their day–to–day inspection will not, however, cause the Engineer to be responsible for those duties* and responsibilities which belong to the Contractor and which include, but are not limited to, full responsibility for the techniques and sequences of construction and the *safety precautions* incidental thereto, and for performing construction work in accordance with the contract documents.

(Italics ours.)

In a deposition of Lanny Lee Zumwalt, the resident safety inspector of STR, the following took place:

Q Did you ever suggest to the contractor that he change the manner in which he was working in order to meet the specifications?

A Only on a private basis.

Q What do you mean "only on a private basis"?

A In any situation outside the engineering all I could do is suggest.

Q What do you mean by "any situation outside the engineering all you could do is suggest"?

A If I observed anything that was, you know, say like a hydraulic hose that was going bad on his rig or something like this, I could tell him about it just as if, the same as a bystander, but I couldn't order him to change it or move it. I could not order him to put a coffin in the ditch or anything like this.

Q Why do you say you could not order him to put a coffin in the trench?

A Because that was spelled out. That was not part of my function. The State Safety Inspector on behalf of OSHA was checking that.

And later on:

Q Well, did you tell him that he ought to shore that trench or use that coffin?

A I couldn't tell him, no. The realms of my authority would not expand to that because I was not expertise [sic] in safety inspection.

From these provisions it is clear that STR was not responsible for safety precautions. All safety matters, including adequate shoring of the ditch, were the exclusive province of Carlyle, the general contractor. This is repeatedly expressed in the Walla Walla–Carlyle construction contract. Part of that contract, the EPA specifications insert, reads:

4. *Safety and Health Standards and Accident Prevention*

. . .

*The Contractor shall be solely and completely responsible* for conditions on the job site, including *safety of all persons* and property during performance of the work. This requirement shall apply continuously and not be limited to normal working hours.

The required and/or implied duty of the Engineer to conduct construction review of the contractor's performance does *not*, and is not intended to, include review of the adequacy of the contractor's safety measures in, on or near the construction site.

The contractor shall comply with the safety standards provisions of applicable laws, building and construction codes and the "Manual of Accident Prevention in Construction" published by the Associated General Contractors of America. *The contractor shall exercise every precaution at all times for the prevention of accidents and the protection of persons (including employees) and property.*

(Italics ours.)

In the provisions labeled Standard Technical Provisions for Sewer Work at SW–15, the contract reads:

The contractor shall furnish, place, and maintain such sheeting and bracing as may be required to support the sides of the trench and prevent any movement therein which might damage or delay the work or cause injury to street surface or adjacent property, and as necessary to provide full safety for workmen and the public. If, in the opinion of the Engineer, any timbering is inadequate, he *may* order additional supports which must be furnished and placed, but compliance with such orders or failure of the Engineer to give them shall not release the Contractor from his responsibility in respect to the adequate maintenance of trenches.

(Italics ours.)

At General Provisions, GP 5.14, Authority and Duties of Inspectors, the contract reads:

Inspectors shall be authorized to inspect all work done and all materials furnished. Such inspection may extend to all or any part of the work in preparation, fabrication, or manufacture of the materials to be used. It is the duty of the inspector to report to the Engineer as to the progress of the work and the manner in which it is being performed, also to report whenever it appears that the material furnished or the work performed by the Contractor fails to fulfill the requirements of the plans and specifications and to call to the attention of the Contractor any such failure.

In case of any dispute arising between the Contractor and the inspector as to materials furnished or manner of performing the work, the inspector shall have authority to reject materials or suspend the work until the question

at issue can be referred to and decided by the Engineer. . . .

The Contractor's responsibility for work performed under this contract shall in no way be relieved because of the presence or absence of an inspector.

. . .

7.05 Public Safety and Convenience

The *Contractor shall be solely and completely responsible for conditions of the job site, including safety of all persons* and property during performance of the work. . . .

The required and/or implied duty of the Engineer to conduct construction review of the Contractor's performance does not, and is not intended to, include review of the adequacy of the Contractor's safety measures in, on or near the construction site.

. . . The convenience of the general public and the protection of persons and property is of prime importance and shall be provided for by the Contractor in an adequate and satisfactory manner.

. . .

7.08 Safeguarding of Excavations

The Contractor shall provide such safeguards and protections around and in the vicinity of the excavations he makes as may be necessary to prevent and avoid the occurrence of damage, loss, injury and death to property and persons because of such excavations. Liability for any such damage, loss, injury or death shall rest with the Contractor. . . .

. . .

8.06 Protection of Work and Property

. . .

The Contractor shall take all necessary precautions for the safety of employees on the work and shall comply with all applicable provisions of Federal, State and municipal safety laws and building codes to prevent accidents or injury to persons on, about or adjacent to the premises where the work is being performed. He shall erect and properly maintain at all times, as required by the conditions and progress of the work, all necessary safeguards for the protection of workmen . . .

(Italics ours.)

In that part of the contract known as Attached Specifications: Standard Specifications for Municipal Public

Works Contracts 1969, attached to the Walla Walla–Carlyle contract, is section 5.01, Authority of Engineer:

Nothing contained in the contract shall be construed as requiring the Engineer to direct the method or manner of performing the work.

7.03 Accident Prevention

Precautions shall be exercised at all times by the Contractor for the protection of persons, employees and property. The safety provisions of applicable laws and local building and construction codes shall be observed. The operations of the Contractor for the protection of persons, and for guarding against hazards of machinery and equipment, shall meet the requirements of state law and all safety regulations as set out in "Safety Standards for Construction" and "General Safety Standards," published and in effect at the time of call for bids.

These contractual provisions demonstrate that safety precautions were to be left exclusively to the contractor, and STR was charged only with assuring that the "intent of the contract" was fulfilled. STR was thus to assure to the City of Walla Walla that the finished sewer line would conform to the plans and specifications. The retained supervisory authority of STR extended only to such conformity. *See Simon v. Omaha Pub. Power Dist.,* 189 Neb. 183, 202 N.W.2d 157 (1972); *Olsen v. Chase Manhattan Bank,* 9 N.Y.2d 829, 215 N.Y.S.2d 773, 175 N.E.2d 350 (1961).

To find STR liable to one of Carlyle's workers injured on the job, we must first find that STR had the duty to supervise the day–to–day manner and method of actually doing the work. *Day v. National U.S. Radiator Corp.,* 241 La. 288, 128 So. 2d 660 (1961). *See* Restatement (Second) of Torts § 414, comment *c* (1965).

There is no indication of actual daily control over Carlyle by STR. STR did employ an inspector for the job, but his duty was limited to ensuring that the finished job conformed to the contractual specifications, and that the daily progress was headed toward this goal. The contract specified that Carlyle would be solely in charge of safety on the job, and STR's inspector's testimony revealed that he was

not charged with that responsibility. The entire area of safety matters was left to the contractor and the State.

In *Amant* and *Loyland,* the courts determined as a matter of law whether there was a duty owed to an injured worker by the engineers. In this case the trial judge granted summary judgment for STR because there was no genuine issue of any material fact; the existence of no duty was determined as a matter of law. After examining the contract and related documents, we agree. The summary judgment is therefore affirmed.

GREEN, C.J., and MUNSON, J., concur.

Reconsideration denied November 28, 1979.

Review denied by Supreme Court February 15, 1980.