[No. 60226-3.    En Banc.    October 6, 1994.]

BERSCHAUER/PHILLIPS CONSTRUCTION Co., *Appellant*, v. SEATTLE SCHOOL DISTRICT No. 1, *Defendant*, HARRY LEE CUMMINGS, ET AL, *Respondents*.

*Floyd & Schlemlein, P.S.,* by *Francis S. Floyd, Martin T. Collier, Thomas E. Stanley,* and *Stephen K. Festor,* for appellant.

*Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* and *Michael J. Bond,* for respondent Cummings.

*Carney Badley Smith & Spellman, P.S.,* by *Stephen L. Nourse* and *Patrick R. Lamb,* for respondent K.M. Maw.

*Philip A. Talmadge* and *Robert G. Nylander* (of *Talmadge and Cutler*) and *Charles A. Kimbrough* and *John D. Matthews* (of *Kraft, Kimbrough & Ganz*), for respondent Pacific Testing Laboratories.

GUY, J. — We granted review to decide whether a general contractor may recover in tort $3.8 million in economic dam-ages for construction delays against an architect, a structural engineer and a project inspector, none of whom were in privity of contract with the general contractor. The Superior Court held the economic loss rule does not allow a general contractor to recover purely economic damages in tort. We affirm.

## BACKGROUND

This lawsuit arises out of a construction project for renovation work and new construction at the Lawton Elementary School in Seattle, Washington. In 1986, the Seattle School District (District), the owner of the construction

project, contracted with Harry Lee Cummings, d.b.a. Cummings Associates Architects (Cummings), to design Lawton Elementary. Cummings, in turn, subcontracted with K.M. Maw, d.b.a. K.M. Maw & Associates (Maw), to provide structural engineering services. The District at no time contracted with Maw. The District contracted with Pacific Testing Laboratories, Inc. (PTL) to perform field inspections of the construction work at Lawton Elementary.

In October 1988, Berschauer/Phillips Construction Company (Berschauer/Phillips) submitted a bid to the District to construct Lawton Elementary. Berschauer/Phillips' estimated construction costs were based on the plans and specifications furnished by the District. The District relied on Cummings and Maw to develop the plan for Lawton Elementary. In November 1988, Berschauer/Phillips was awarded the general contract.

Berschauer/Phillips completed construction at Lawton Elementary and subsequently filed a lawsuit against the District for breach of contract. Berschauer/Phillips alleges in its complaint that the District's incomplete and defective plans for constructing Lawton Elementary, together with the District's failure to manage or participate in construction inspections, breached express and implied contractual obligations to Berschauer/Phillips. Berschauer/Phillips requests $3.8 million in damages. Berschauer/Phillips concedes the damages it seeks are purely economic:

> Berschauer/Phillips' claims are solely and simply for economic loss. Quite simply, Berschauer/Phillips expended more funds than expected and was delayed in its completion of its work, and consequently was damaged monetarily.
>
> *This matter involves no claims for injury or death to person, or harm to property.*

Clerk's Papers, at 320.

Berschauer/Phillips amended its original complaint to include tort claims against Cummings, Maw and PTL. Berschauer/Phillips alleges the architectural plans prepared by Cummings and the structural engineering plans prepared by Maw were inaccurate and incomplete. Berschauer/Phil-

lips alleges PTL was negligent for failing to competently inspect the erection of the structural steel at Lawton Elementary. Berschauer/Phillips asserts these acts of negligence significantly increased the cost to renovate and construct Lawton Elementary.

Berschauer/Phillips settled with the District and both parties signed an agreed order dismissing the District with prejudice. As part of the settlement agreement, the District assigned to Berschauer/Phillips "any and all such claims relating to this project" against Cummings, Maw and PTL. Clerk's Papers, at 279. Following the settlement agreement, Berschauer/Phillips filed a second amended complaint to assert the assigned claims.

In September 1992, Cummings filed a Motion for Partial Summary Judgment requesting dismissal of Berschauer/ Phillips' assigned breach of contract claim. Cummings argued the antiassignment provision contained in the contract between the District and Cummings prohibited the District from assigning the breach of contract cause of action to Berschauer/Phillips. Alternatively, Cummings argued the District, and thus Berschauer/Phillips, is prohibited under the doctrine of equitable estoppel from asserting a breach of contract cause of action. The Superior Court granted Cummings' motion for partial summary judgment on both grounds.

In October 1992, PTL filed a Motion for Partial Summary Judgment requesting dismissal of Berschauer/Phillips' assigned breach of contract claim. PTL argued public policy prohibited the District from assigning the breach of contract cause of action to Berschauer/Phillips. PTL, similar to Cummings, also argued the District, and thus Berschauer/ Phillips, is prohibited under the doctrine of equitable estoppel from asserting a breach of contract cause of action. The Superior Court denied PTL's Motion for Partial Summary Judgment on both grounds.

Cummings, Maw and PTL separately filed Motions for Partial Summary Judgment requesting dismissal of Berschauer/Phillips' direct and assigned causes of action in tort. Cummings, Maw and PTL argued the economic loss rule

prevents the recovery in tort of purely economic damages. The Superior Court agreed, and on February 25, 1993, Cummings and Maw were dismissed from the lawsuit and PTL's Motion for Partial Summary Judgment was granted.

The Superior Court entered a final judgment pursuant to CR 54(b) to allow an immediate appeal. Berschauer/Phillips filed a Notice of Appeal directly with this court requesting review of the Superior Court's rulings dismissing Cummings and Maw and granting partial summary judgment to PTL. PTL filed a Notice of Cross Appeal requesting review of the Superior Court's decision denying PTL's motion for partial summary judgment. We granted review.

## ISSUES

The primary issue is whether the economic loss rule prevents a general contractor from recovering purely economic damages in tort from an architect, an engineer and an inspector, none of whom were in privity of contract with the general contractor. Also at issue is whether a general antiassignment provision in a contract prohibits the assignment of a breach of contract cause of action, whether equitable estoppel enjoins a party from bringing a breach of contract cause of action, and whether public policy forbids the assignment of a contract cause of action.

## ANALYSIS

## I

The Superior Court dismissed all of Berschauer/Phillips' direct and assigned tort claims tort claims against Cummings, Maw and PTL. The Superior Court ruled the economic loss rule prevents a general contractor from recovering purely economic damages in tort. We agree and affirm the Superior Court.

The economic loss rule marks the fundamental boundary between the law of contracts, which is designed to enforce expectations created by agreement, and the law of torts, which is designed to protect citizens and their property by imposing a duty of reasonable care on others. Sidney R. Barrett, Jr., *Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis*, 40 S.C. L. Rev. 891, 894-95

(1989). The economic loss rule was developed to prevent disproportionate liability and allow parties to allocate risk by contract. Michael D. Lieder, *Constructing a New Action for Negligent Infliction of Economic Loss: Building on Cardozo and Coase*, 66 Wash. L. Rev. 937, 940-41 (1991). Economic loss is a conceptual device used to classify damages for which a remedy in tort or contract is deemed permissible, but are more properly remediable only in contract. *Washington Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 861 n.10, 774 P.2d 1199, 779 P.2d 697 (1989). Moreover, "economic loss describes those damages falling on the contract side of 'the line between tort and contract'." *Graybar*, at 861 n.10 (quoting *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1173 (3d Cir. 1981)).

In 1976, this court adopted a minority view and permitted a plaintiff to recover damages in tort for purely economic damages (lost profits) after a defectively manufactured engine malfunctioned during a commercial fishing trip. *Berg v. GM Corp.*, 87 Wn.2d 584, 555 P.2d 818 (1976). *See Stanton v. Bayliner Marine Corp.*, 123 Wn.2d 64, 84, 866 P.2d 15 (1993). The *Berg* decision was short-lived, however, as the Legislature effectively overruled *Berg* in 1981 with the enactment of the Washington products liability act (WPLA), RCW 7.72. *Stanton*, 123 Wn.2d at 84; *see* Mark S. Carlson & Heidi A. Irvin, Comment, *Recovery of Pure Economic Loss in Product Liability Actions: An Economic Comparison of Three Legal Rules*, 11 U. Puget Sound L. Rev. 283, 290 (1988). Under the WPLA, the Legislature specifically excluded a recovery in tort for economic losses, deferring such claims instead to the Uniform Commercial Code. *Stanton*, 123 Wn.2d at 85; *see* RCW 7.72.010(6), .020(2). Because the present action is not governed by the WPLA, we apply Washington common law to determine whether a general contractor may recover economic damages in tort.[1]

---

[1]Architectural services, engineering services, and inspection services are not "products" under the WPLA. "Product" means any object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce. RCW 7.72.010(3).

Berschauer/Phillips asserts two lines of cases exist in Washington with respect to whether a plaintiff may recover purely economic damages in tort. The first line of cases, without discussing the economic loss rule, suggests that general contractors may recover purely economic damages in tort from design professionals (*e.g.*, architects, engineers, inspectors). The second line of cases prohibits a tort cause of action for purely economic damages. The second line of cases, however, involves design professionals and remote purchases, not design professionals and general contractors. Upon reviewing both lines of cases, we hold the economic loss rule does not allow a general contractor to recover purely economic damages in tort from a design professional.

The first line of cases cited by Berschauer/Phillips includes: *Detweiler Bros., Inc. v. John Graham & Co.*, 412 F. Supp. 416 (E.D. Wash. 1976); *Del Guzzi Constr. Co. v. Global Northwest Ltd.*, 105 Wn.2d 878, 719 P.2d 120 (1986); and *Seattle W. Indus., Inc. v. David A. Mowat Co.*, 110 Wn.2d 1, 750 P.2d 245 (1988). These cases stand for the contention that economic losses are recoverable in a cause of action in tort against a design professional.

■ In *Detweiler*, the United States District Court for the Eastern District of Washington refused to grant summary judgment in favor of a defendant architect who was being sued for negligence by a subcontractor.

> Courts are divided on the issue of whether privity of contract is a prerequisite to the maintenance of a tort suit by a contractor against an architect, and although the courts of Washington have not confronted the issue an emerging majority of jurisdictions have taken the position that a contractor can maintain a negligence action against an architect without direct privity of contract between the parties.

*Detweiler*, 412 F. Supp. at 419. In *Detweiler*, the subcontractor sought economic damages from an architectural firm that contracted with the project owner to design, inspect and, to a limited extent, supervise the installation of pipe into the coliseum at Washington State University. *Detweiler*, 412 F. Supp. at 418. *Detweiler*, a federal district court case decided in the same year *Berg v. GM Corp., supra*, was

decided, is not controlling on this court when state substantive law is interpreted. *See Columbia Grain, Inc. v. Oregon Ins. Guar. Ass'n*, 22 F.3d 928, 931 (9th Cir. 1994) (Ninth Circuit is bound to follow the Oregon Supreme Court on state substantive law issues); *Olympic Sports Prods., Inc. v. Universal Athletic Sales Co.*, 760 F.2d 910, 912-13 (9th Cir. 1985) (federal court of appeals is bound to follow the decision of state's high court in interpreting that state's law).

In *Del Guzzi*, a subcontractor filed a cause of action against the general contractor, the owner of the project, and the architect who designed and supervised the construction project. The subcontractor alleged breach of contract and negligence claims for cost overruns. The Superior Court dismissed the contract claim, finding no privity of contract. The Superior Court dismissed the tort claim, finding the statute of limitation had expired. *Del Guzzi*, 105 Wn.2d at 882. On appeal, this court held the cause of action for negligence was untimely and thus barred by the statute of limitation, RCW 4.16.310. *Del Guzzi*, 105 Wn.2d at 885. Contrary to Berschauer/Phillips' assertion, the court in *Del Guzzi* was not required nor did it decide whether a tort claim may be filed against an owner or architect for purely economic damages. *Del Guzzi* is not dispositive of the issue before the court.

In *Seattle Western*, a subcontractor, hired by the general contractor to fabricate steel for a bridge, sued the architect for negligence. Without discussing the economic loss rule or whether a cause of action may be brought in tort for economic damages due to construction delays, this court affirmed the subcontractor's jury verdict against the architect for negligence. In cases where a legal theory is not discussed in the opinion, that case is not controlling on a future case where the legal theory is properly raised. *See Webster v. Fall*, 266 U.S. 507, 511, 69 L. Ed. 411, 45 S. Ct. 148 (1925) (questions which merely lurk in the record, but are neither brought to a court's attention nor ruled upon, are not considered to have been decided so as to constitute precedent); *Losada v. Golden Gate Disposal Co.*, 950 F.2d 1395, 1399 (9th Cir. 1991); *Anderson v. East Gate Temple*

*Ass'n*, 189 Wash. 221, 223, 64 P.2d 510 (1937). *Seattle Western* is not dispositive of the issue before the court.

The leading case in the second line of cases, holding economic damages are not recoverable in a cause of action in tort, is this court's decision in *Stuart v. Coldwell Banker Comm'l Group, Inc.*, 109 Wn.2d 406, 745 P.2d 1284 (1987). *Stuart* involved a claim for negligent construction by a condominium homeowners association against the builder-vendor for defects in private decks and walkways. In *Stuart*, the plaintiffs suffered neither personal injury nor physical damage. Rather, the damage suffered was purely economic — the cost to repair the deteriorated decks and walkways. To fashion a remedy, the Superior Court adopted a theory of negligent construction. This court reversed the Superior Court and held no cause of action exists for negligent construction.

> Washington does not recognize a cause of action for negligent construction on behalf of individual homeowners. Beyond the terms expressed in the contract of sale, the only recognized duty owing from a builder-vendor of a newly completed residence to its first purchaser is that embodied in the implied warranty of habitability, which arises from the sale transaction. Plaintiff homeowners faced with losses that are not of their own making present a sympathetic case, and we understand the desire of the trial court to fashion a remedy. We must exercise caution, however, that we do not unduly upset the law upon which expectations are built and business is conducted.

(Citation omitted.) *Stuart*, 109 Wn.2d at 417-18. In reaching this conclusion, this court acknowledged the confusion centered in this area of the law.

> [W]e have, in the past, allowed recovery under a negligence theory for lost *profits* standing alone (upon proof of causation and breach of duty). *Berg v. General Motors Corp.*, 87 Wn.2d 584, 591, 555 P.2d 818 (1976). In *Berg,* this court noted the convoluted history of products liability doctrine, conceded that "[c]ourts are anxious to find some legal theory sufficient to protect the public interest", *Berg*, at 593, and made a policy-based decision to allow damages to a commercial fisherman for the anticipated value of a fish catch that was lost when his boat was laid up for repairs of defendant manufacturer's negligently built motor.

> The instant case, however, presents a leap beyond the theory applied in *Berg*. The plaintiffs have alleged no injury beyond the affected areas themselves, and no damages beyond the cost of repair. In its effort to find recovery for the plaintiffs, the trial court formulated a theory of recovery in negligence that overlooks the intricacies and logical inconsistencies inherent in the approach.

*Stuart*, 109 Wn.2d at 419-20.

In *Atherton Condominium Apartment-Owners Ass'n Bd. of Directors v. Blume Dev. Co.*, 115 Wn.2d 506, 799 P.2d 250 (1990), the owners of a condominium complex appealed a summary judgment order dismissing virtually all of their construction defect claims against the builder-vendor, the architect, and the building inspector. This court affirmed the Superior Court's decision dismissing the negligent design claims against the architect on several grounds, including the owner's failure to cite authority that Washington recognizes a cause of action in tort by a third party seeking economic damages for negligent design.

> Owners also fail to articulate a recognizable negligence claim. Owners do not demonstrate what, if any, duty Westlin [the architect] owed to them. Owners do not indicate that Westlin breached any duty of care and that such breach was the proximate cause of the alleged damages. In addition, Owners appear to seek only economic loss damages which are not recoverable under tort law. *See* R. Cushman & T. Bottum, *Architect and Engineer Liability: Claims Against Design Professionals* § 7.9 (1987).

*Atherton*, 115 Wn.2d at 534 n.17.

■ We follow the *Stuart* and *Atherton* line of cases and maintain the fundamental boundaries of tort and contract law by limiting the recovery of economic loss due to construction delays to the remedies provided by contract. We so hold to ensure that the allocation of risk and the determination of potential future liability is based on what the parties bargained for in the contract. We hold parties to their contracts. If tort and contract remedies were allowed to overlap, certainty and predictability in allocating risk would decrease and impede future business activity. The construction industry in particular would suffer, for it is in this industry that

we see most clearly the importance of the precise allocation of risk as secured by contract. The fees charged by architects, engineers, contractors, developers, vendors, and so on are founded on their expected liability exposure as bargained and provided for in the contract. As Justice Cardozo warned, the expansion of duty in tort to include economic interests would expose defendants

> to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences.

*Ultramares Corp. v. Touche*, 255 N.Y. 170, 179-80, 174 N.E. 441, 74 A.L.R. 1139 (1931).

A bright line distinction between the remedies offered in contract and tort with respect to economic damages also encourages parties to negotiate toward the risk distribution that is desired or customary. We preserve the incentive to adequately self-protect during the bargaining process. *See* Barrett, 40 S.C. L. Rev. at 933. If we held to the contrary, a party could bring a cause of action in tort to recover benefits they were unable to obtain in contractual negotiations.

Furthermore, it would be incongruous to deprive the unsophisticated consumer of economic damages under the WPLA, yet allow recovery to a sophisticated consumer, *e.g.*, a general contractor, particularly when the sophisticated consumer is privy to the economic risks associated with his or her business. We therefore align the common law rule on "economic loss" with the Legislature's decision to limit purely economic damages under the WPLA to contract claims under the Uniform Commercial Code.

Alternatively, Berschauer/Phillips requests that this court apply the Restatement (Second) of Torts § 552 (1977) to permit a general contractor not in privity of contract to bring a tort cause of action against a design professional for negligent misrepresentations. We acknowledge that § 552 provides support for the recovery of economic damages in the construction industry for negligent misrepresentations. *See*

§ 552 cmt. n, illus. 9. The Restatement is equivocal in its support, however. *See* Restatement (Second) of Torts § 766C (1979) (economic damages resulting from a party who negligently makes the performance of a contract more expensive to perform are not recoverable absent physical harm); *but see* § 766C cmt. e (§ 766C may not apply if § 552 applies). We also acknowledge that the tort of negligent misrepresentation is recognized in Washington. *See, e.g., Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 180, 876 P.2d 435 (1994) (employment termination); *Haberman v. WPPSS*, 109 Wn.2d 107, 744 P.2d 1032, 750 P.2d 254 (1987) (bond and security misrepresentations). We hold that when parties have contracted to protect against potential economic liability, as is the case in the construction industry, contract principles override the tort principles in § 552 and, thus, purely economic damages are not recoverable. *Accord Floor Craft Floor Covering, Inc. v. Parma Comm'ty Gen. Hosp. Ass'n*, 54 Ohio St. 3d 1, 7, 560 N.E.2d 206 (1990) (§ 552 of the Restatement not adopted to allow a general contractor to recover economic damages from a design professional); *Williams & Sons Erectors, Inc. v. South Carolina Steel Corp.*, 983 F.2d 1176, 1181-83 (2d Cir. 1993) (under New York law, § 552 not adopted to permit a general contractor to recover economic damages from an architect); *but see Donnelly Constr. Co. v. Oberg/Hunt/ Gilleland*, 139 Ariz. 184, 188-89, 677 P.2d 1292 (1984) (an architect, absent privity of contract, may be liable to a general contractor for economic damages under § 552).

There is a beneficial effect to society when contractual agreements are enforced and expectancy interests are not frustrated. In cases involving construction disputes, the contracts entered into among the various parties shall govern their economic expectations. The preservation of the contract represents the most efficient and fair manner in which to limit liability and govern economic expectations in the construction business. Berschauer/Phillips' recovery of economic damages is therefore limited to those damages recovered from the District and to those assigned contractual claims that survive this appeal.

## II

The Superior Court ruled the antiassignment clause contained in the contract between the District and Cummings prohibited the assignment by the District to Berschauer/Phillips of a breach of contract cause of action against Cummings. We disagree and reverse the Superior Court.

The District and Cummings entered into a contract for architectural services pertaining to the new construction and renovation at Lawton Elementary. The contract between the District and Cummings contained the following antiassignment clause:

> 14.6 *Assignment*. The Owner and the Architect, respectively, bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement, and to the partners, successors, assigns and legal representatives of such other party with respect to all covenants of this Agreement. Neither the Owner nor the Architect shall assign, sublet or transfer any interest in this Agreement without the written consent of the other.

Clerk's Papers, at 145. Berschauer/Phillips argues this is a general antiassignment clause and thus does not prohibit the assignment of a breach of contract cause of action. In contrast, Cummings argues the contract language plainly prohibits the District from assigning *any interest* in the agreement without first obtaining Cummings' written consent. Cummings asserts any interest means all interests, including a cause of action for breach of contract.

Contracts are assignable unless such assignment is expressly prohibited by statute or contract, or is in contravention of public policy. *See Puget Sound Nat'l Bank v. Department of Rev.*, 123 Wn.2d 284, 288, 868 P.2d 127 (1994); *Portland Elec. & Plumbing Co. v. Vancouver*, 29 Wn. App. 292, 294-95, 627 P.2d 1350 (1981).

In *Portland Elec.*, the Court of Appeals held " 'a right to damages for breach of contract is assignable, even though the contract contained a prohibition of assignment.' " *Portland Elec.*, 29 Wn. App. at 294 (quoting 3 Samuel Williston, *Contracts* § 412, at 46-47 (3d ed. 1960)). The court in-

*Portland Elec.* drew a distinction between an assignment for performance and an assignment for damages.

> The primary purpose of clauses prohibiting the assignment of contract rights without a contracting party's permission is to protect him [or her] in selecting the persons with whom he [or she] deals.

*Portland Elec.*, 29 Wn. App. at 295; *see also* John D. Calamari & Joseph M. Perillo, *Contracts* § 18-16, at 740 (3d ed. 1987) (antiassignment provisions are emasculated by courts if they are drafted with insufficient clarity to accomplish their intended goal).

We follow the reasoning adopted in *Portland Elec.* and hold a general antiassignment clause, one aimed at prohibiting the assignment of a contractual performance, does not, absent specific language to the contrary, prohibit the assignment of a breach of contract cause of action. The assignment clause between Cummings and the District is a boilerplate provision intended to prohibit the exchange of contractual performances. Cummings completed the terms of its contract prior to the District's assignment of the breach of contract claim to Berschauer/Phillips. Given complete performance, the rule in *Portland Elec.* makes good sense. We therefore hold a general assignment clause, one directed at performance of the contract, does not, after performance is completed, prohibit the assignment of a cause of action for breach of contract.

## III

The Superior Court ruled the District, and thus Berschauer/Phillips, is prohibited under the doctrine of equitable estoppel from asserting a breach of contract cause of action against Cummings. The Superior Court denied a similar motion filed by PTL. We hold equitable estoppel, under the facts of this case, does not prohibit the District, and therefore Berschauer/Phillips, from asserting a breach of contract cause of action against Cummings or PTL. We reverse the Superior Court's decision granting partial sum-

mary judgment to Cummings and affirm the Superior Court's decision denying partial summary judgment to PTL.

▮▮▮ Equitable estoppel requires: (1) an admission, statement, or act inconsistent with a claim afterward asserted; (2) action by another in reasonable reliance on that act, statement, or admission; and (3) injury to the party who relied if the court allows the first party to contradict or repudiate the prior act, statement, or admission. *Robinson v. Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318, *cert. denied*, 121 L. Ed. 2d 598 (1992). Estoppel is not favored and a party asserting estoppel must prove each of its elements by clear, cogent and convincing evidence. *Colonial Imports, Inc. v. Carlton Northwest, Inc.*, 121 Wn.2d 726, 734, 853 P.2d 913 (1993).

Cummings and PTL rely on a joint defense agreement entered into between the District, Cummings, Maw, and PTL, and oral statements made by District agents to Cummings and PTL to support their claim for equitable estoppel.

The intent of the joint defense agreement was to facilitate discovery and cooperation with respect to common defenses among the four defendants and to share expenses. The joint defense agreement was not intended to release any claims the District may have had against any codefendant. This intent is evidenced by a clause in the joint defense agreement which anticipated claims between the four Defendants for "indemnity, contribution or the like". Clerk's Papers, at 224. Thus, if the District wanted to seek contribution from Cummings or PTL, the existence of the joint defense agreement would not prohibit such conduct.

The oral statements relied on by Cummings are recapitulated in an affidavit by Harry Cummings:

> School district representative John Jacobsen and Doug Haner advised me that the School District was *fully satisfied with our performance under our contract and that they had no intention of filing a suit against our firm.* In reliance on these representations and the joint defense agreement reached on October 22, 1991, I paid $4,000 toward the cost of an extensive database of records gathered and organized by Seattle School District's attorneys.

(Italics ours.) Clerk's Papers, at 234. PTL, in turn, provided an affidavit from James Freeling, the president of PTL, stating that "[a]t no time to date, including after PTL was made a party to this lawsuit, did any person representing SSD [the District] ever indicate any dissatisfaction with the services performed by PTL on the Lawton project." Clerk's Papers, at 469.

■ The first element of equitable estoppel has not been proved by clear, cogent and convincing evidence. The joint defense agreement, in combination with the statements allegedly made by District agents, are not acts inconsistent with the assignment of a breach of contract cause of action. Praise of one's work product and statements that a party does not intend to file a lawsuit against another party do not alone or in combination equal an affirmative promise to not file a lawsuit. Consequently, Berschauer/Phillips is not estopped from bringing an assigned contract claim against Cummings or PTL.

## IV

The Superior Court ruled public policy, under the facts of this case, does not prohibit the assignment of a breach of contract cause of action from the District to Berschauer/Phillips. We agree and affirm the Superior Court.

PTL asserts the assignment of a contract cause of action by the District to Berschauer/Phillips is void as against public policy. In Washington, public policy may void an otherwise valid contractual assignment. *Puget Sound Nat'l Bank v. Department of Rev.*, 123 Wn.2d at 288. PTL cites to the Seattle Building Code for the foundation that the project contractor (Berschauer/Phillips) cannot employ the special inspector (PTL).

> The registered special inspector shall not inspect work performed, or material supplied, by any contractor, subcontractor, or material vendor with whom such inspector is employed.

Seattle Building Code 306(k)(3). PTL asserts public policy is implicated because if a special inspector knew that contractors could acquire breach of contract claims against it, the

integrity and reliability of the special inspection program would be jeopardized. "There would be great potential for intimidation and pressure on inspection agencies and special inspectors to satisfy and appease contractors." Br. of Resp't/Cross Appellant, at 36-37.

PTL's public policy argument is not persuasive in that it assumes the assignment of a breach of contract claim creates an employer/employee relationship between PTL and Berschauer/Phillips. We disagree with this assumption. Furthermore, PTL's public policy argument fails because it does not explain why the potential for intimidation and pressure to improperly pass inspections is only present if a contract claim is assigned to Berschauer/Phillips, but not present while PTL is employed by the District. The pressure to pass inspections is present under either scenario. We therefore conclude public policy, under the facts of this case, does not prohibit the assignment of the District's breach of contract claim against PTL to Berschauer/Phillips.

### CONCLUSION

We hold the economic loss rule does not allow a general contractor to recover purely economic damages from a design professional in tort. We therefore limit Berschauer/Phillips' recovery of economic damages to those damages recoverable in contract. We also hold a general antiassignment provision in a contract does not prohibit the assignment of a breach of contract cause of action after the completion of performance. Finally, we hold, under the facts of this case, that equitable estoppel and public policy do not forbid the assignment of a contract cause of action. The decision of the Superior Court is affirmed in part and reversed in part, and the case is remanded to the Superior Court for further proceedings.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, JOHNSON, and MADSEN, JJ., concur.