36 P.3d 1073 (2001)
109 Wash.App. 537
Hans B. HOFSTEE, Appellant,
v.
Alvin DOW and Jane Doe Dow, husband and wife, Respondents,
State of Washington, Department of Agriculture, Defendant.
No. 20046-9-III.
Court of Appeals of Washington, Division 3, Panel Three.
December 20, 2001.
*1075 Neil E. Humphries, Humphries, Patterson & Lewis, Spokane, for appellant.
Erika Balazs, Lukins & Annis, Spokane, for respondents.
*1074 SCHULTHEIS, J.
In this third appeal of a lawsuit that has yet to come to trial, Hans Hofstee challenges the trial court's dismissal of his claims for negligence and strict liability. The trial court found that Mr. Hofstee's damages, allegedly caused by Alvin Dow's failure to timely test his cows for brucellosis before they were sold to Mr. Hofstee, were solely economic. Consequently, the trial court concluded Mr. Hofstee was limited to recovery under the Uniform Commercial Code and the Consumer Protection Act. Mr. Hofstee contends his damages involve more than economic loss. We disagree, and affirm.

FACTS
The facts are not disputed. In October 1981, Mr. Dow agreed to sell Mr. Hofstee 115 head of dairy cattle. WAC 16-86-015 requires that all dairy cattle sold in Washington must test negative for brucellosis within 30 days of transfer. Mr. Dow had the cattle tested for brucellosis on November 9 and 16, 1981. One of the cows "bled" (blood-tested) on November 9 tested "suspect" for brucellosis. She was bled again on November 16 and again was labeled suspect. The suspect cow was slaughtered on November 24 and further testing proved she was not infected.[1]
In late November or early December, Mr. Hofstee asked Mr. Dow to deliver the cattle on December 15, just outside the required 30-day testing period. Mr. Dow called the Office of the State Veterinarian and got permission to ship the cattle without further testing. When the acting state veterinarian noted that Mr. Hofstee would need to retest after he took delivery, Mr. Dow asked for and received permission to do the test himself, before the herd was shipped. Mr. Dow's veterinarian made the test samples after confirming with the acting state veterinarian that Mr. Dow had permission to perform the tests. The herd was tested on December 14 and delivered to Mr. Hofstee the next day.
Within a week after Mr. Hofstee took delivery of the cattle, the State reported that one of them now tested suspect for brucellosis. This cow was re-bled in March 1982, and the new blood test showed she was a "reactor."[2] When slaughtered and tested again in April, however, the reactor cow was *1076 determined to be free of infection. The State quarantined the entire herd on March 26, 1982, and it remained in quarantine for about four months.
In September 1984, Mr. Hofstee sued Mr. Dow and the State for negligence, breach of the implied warranty of fitness for a particular purpose, strict liability, and violation of the Consumer Protection Act. Mr. Dow and the State filed cross-claims. In June 1996, the trial court granted summary judgment dismissal of Mr. Hofstee's complaint because the second cow eventually tested disease-free. Mr. Hofstee appealed and we reversed and remanded for trial, finding that reasonable minds could differ on the questions whether WAC 16-86-015 was violated and whether Mr. Hofstee suffered financial losses as a result of that violation. Hofstee v. Dow, No. 16000-9-III, 1998 WL 229428, 90 Wash.App. 1039 (Wash.Ct.App. Apr. 30, 1998).
In February 1999, the trial court granted summary judgment dismissal of Mr. Hofstee's claims against the State. Mr. Hofstee again appealed and we affirmed in a decision filed in February 2000. Hofstee v. Dow, No. 18312-2-III, 2000 WL 199068, 99 Wash.App. 1038 (Wash.Ct.App. Feb.15, 2000). Back at trial court again, Mr. Dow moved for partial dismissal of the claims for negligence and strict liability in December 2000. The motion was granted in February 2001 and this appeal followed.

ECONOMIC LOSS RULE
Mr. Hofstee contends the economic loss rule does not prevent him from suing for negligence and strict liability. He argues that the nature of the harm here implicates the safety-insurance policies of tort law rather than the expectation-bargain protection of contract law.
Our review is de novo. Although Mr. Dow moved for partial dismissal based on CR 12(b)(6) (failure to state a claim with available relief), the trial court granted partial summary judgment. When the facts are not at issue, as in this case, we conduct de novo review both on motions for failure to state a claim under CR 12(b)(6) and motions for summary judgment. Wells v. Olsten Corp., 104 Wash.App. 135, 139, 15 P.3d 652 (2001) (citing Reid v. Pierce County, 136 Wash.2d 195, 201, 961 P.2d 333 (1998)). Because the trial court treated the motion to dismiss as one for summary judgment, we review the pleadings to determine whether a right of recovery can be established under any provable set of facts. Judy v. Hanford Envtl. Health Found., 106 Wash.App. 26, 33-34, 22 P.3d 810, review denied, 144 Wash.2d 1020, 32 P.3d 284 (2001).
In Washington, negligence and strict liability claims are now subsumed under the Washington product liability act (WPLA), chapter 7.22 RCW, and claims involving transactions in goods are covered by the Uniform Commercial Code (UCC), Title 62A RCW. The WPLA explicitly confines recovery to physical harm suffered by persons and property and leaves purely economic loss to the UCC. RCW 7.72.010(6); Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc., 119 Wash.2d 334, 351, 831 P.2d 724 (1992). This economic loss rule marks the boundary between the law of contracts designed to enforce expectations created by agreementand the law of tortsdesigned to protect citizens and their property by imposing a duty of reasonable care on others. Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1, 124 Wash.2d 816, 821, 881 P.2d 986 (1994). Particular damages may be remediable in tort as well as in contract, but if the damages fall on the contract side of the line and are more properly remediable in contract, tort recovery is precluded. Id. at 822, 881 P.2d 986.
Mr. Hofstee seeks direct and consequential damages (including, we presume, lost profits) for the quarantine of his cattle, proximately caused by the detection of a brucellosis reactor cow in the herd. Both parties apparently agree that the cows are "products" for the purposes of the WPLA, RCW 7.72.010(3), and "goods" for the purposes of the UCC, RCW 62A.2-105(1).[3] *1077 None of the cows actually had brucellosis or actually threatened to infect other cows or humans. The only apparent injury was Mr. Hofstee's inability to sell, breed, or milk the cows during the period of the quarantine. Our question is whether those damages are merely economic losses or whether they implicate tort law concerns.
Economic loss covers two general areas of damages: (1) direct economic loss based on inadequate product value, measured by the cost to repair and replace the defective product; and (2) indirect or consequential loss proximately caused by the loss of use of the product (e.g., lost profits). Wash. Water Power Co. v. Graybar Elec. Co., 112 Wn.2d 847, 860 n. 9, 774 P.2d 1199, 779 P.2d 697 (1989). In a commercial transaction, the parties to a sale of goods have the opportunity to negotiate terms, warranties, disclaimers, and other specifications. Neibarger v. Universal Coops., Inc., 439 Mich. 512, 523, 486 N.W.2d 612 (1992). If the goods prove to be faulty and the only losses are economic, UCC provisions compensate the buyer for direct, incidental, and consequential losses. Id. at 532, 486 N.W.2d 612. Such damages are presumed to be within the contemplation of the parties to the agreement. Id. Tort law, on the other hand, is traditionally concerned with the obligations imposed by law rather than by bargain. Carlson v. Sharp, 99 Wash.App. 324, 328, 994 P.2d 851 (1999), review denied, 141 Wash.2d 1024, 11 P.3d 827 (2000). A manufacturer or distributor of products will be liable in tort for any unsafe product that creates an unreasonable risk of harm to persons or property. Graybar, 112 Wash.2d at 864, 774 P.2d 1199; Staton Hills Winery Co. v. Collons, 96 Wash.App. 590, 595, 980 P.2d 784 (1999). The key distinction is whether the economic loss arises from expectations created by agreement or from an unreasonable risk of harm created by a breach of the duty of reasonable care. Staton Hills, 96 Wash.App. at 594-95, 980 P.2d 784.
Washington courts have adopted a "risk of harm" analysis to resolve whether particular damages fit within the economic loss exclusion. Id. at 595, 980 P.2d 784. Considering the nature of the defect, the type of risk it posed, and the manner in which the injury arose, the court determines whether the safety-insurance of tort law or the expectation-bargain protection of contract law is most applicable. Id. at 596, 980 P.2d 784. To complicate matters, courts have recently applied two tests of the risk of harm: a "sudden and dangerous" test and an "evaluative approach." Id. at 597, 980 P.2d 784 (citing Touchet Valley, 119 Wash.2d at 353-55, 831 P.2d 724). Neither test has been approved by the Washington Supreme Court (although both were discussed in Touchet Valley, 119 Wash.2d at 352-55, 831 P.2d 724, and in Graybar, 112 Wash.2d at 866-67, 774 P.2d 1199) and the tests complicate what should be simple questions: Was the damage suffered by commercial parties who bargained at arm's length for expectations that were frustrated, or was it an unexpected injury suffered by parties who could not negotiate to avoid the risk of the defective product? See generally Carlson, 99 Wash. App. at 329, 994 P.2d 851; Staton Hills, 96 Wash.App. at 597-602, 980 P.2d 784.
Briefly stated, the sudden and dangerous test examines the manner in which the product failure occurred. Carlson, 99 Wash.App. at 329, 994 P.2d 851. If the failure was a sudden and dangerous event, it constitutes a tort. Id. The evaluative approach expands the analysis to include the nature of the defect and the type of risk as well as the manner in which the injury arose. Id. In this case, the fact that one of Mr. Hofstee's cows was determined to be a brucellosis reactor did not qualify as a sudden and dangerous event. Brucellosis testing is part of the bargain to sell and deliver dairy cattle in Washington, dictated by statute and Washington regulations. RCW 16.36.100; WAC 16-86-015. The threat of brucellosis exposure is recognized and accounted for in any sale of dairy cattle within the state. A product "defect" in the form of a cow that tests as a reactor is therefore not sudden and *1078 unexpected. Further, the cow here did not actually have brucellosis and therefore was never unreasonably dangerous.
The evaluative approach first examines whether the defect was merely a failure to meet the expectations under the contract or indicative of a hazardous product requiring the protection of tort law. Touchet Valley, 119 Wash.2d at 354, 831 P.2d 724; Staton Hills, 96 Wash.App. at 598, 980 P.2d 784. This approach also asks whether the risk was significant and whether it was foreseeable. Staton Hills, 96 Wash.App. at 598, 980 P.2d 784 (where the risk was foreseeable and the parties were bargaining at arm's length, contract policies are implicated). Finally, the evaluative approach, like the sudden and dangerous test, considers whether the injury arose as the result of a calamitous and sudden event. Touchet Valley, 119 Wash.2d at 354, 831 P.2d 724; Staton Hills, 96 Wash. App. at 599, 980 P.2d 784. Mr. Dow's failure to test the cows in time (before Mr. Hofstee took delivery) to show that one of them was a reactor was more in the nature of a breach of warranty than a delivery of a hazardous product. The risk that a cow would turn out to be a reactor was somewhat significant, but it was clearly foreseeable by parties that bargained at arm's length. And as discussed above, the defect was not a sudden or dangerous event.
Consequently, under either test of the risk of harm analysis, the damages suffered by Mr. Hofstee do not constitute more than pure economic harm and are more properly remediable under the UCC than under the tort principles of the WPLA. The trial court properly dismissed the negligence and strict liability claims on partial summary judgment.
Affirmed.
WE CONCUR: BROWN, A.C.J. and SWEENEY, J.
NOTES
[1] Mr. Dow's cattle had been vaccinated against brucellosis. Vaccination with the live virus occasionally causes false suspect or positive test results.
[2] Brucellosis test results range from negative to suspect to reactor, with reactor representing the most positive indication of infection. Reactors may be moved or sold only for slaughter. WAC 16-86-060.
[3] Under RCW 7.72.010(3), products are defined as objects possessing intrinsic value, capable of delivery, and produced for introduction to trade or commerce. Goods under RCW 62A.2-105(1) include all things that are movable at the time of identification to the contract for sale, including the unborn young of animals and growing crops.